## THE KINNARD PRESS COMPANY v. WYATT STANLEY.

**No. 13,939.**  ( 79 Pac. 661.)

### SYLLABUS BY THE COURT.

1. CONTRACT—*Breach of Warranty—Competent Evidence.* Where an engine is sold upon a warranty that it is capable of developing twenty-five horse-power when tested according to a designated system, a finding that there was a breach of such warranty may be sustained by evidence that in actual use, under ordinary conditions, it could not develop more than fifteen horse-power, no test ever having been made according to the prescribed method.

2. ——— *Complaint within Five Days — Condition Construed.* Where a contract of warranty under which machinery is sold provides that its continued use for five days without complaint shall be conclusive evidence of the fulfilment of the warranty, a retention of the machinery without complaint for five days after its first use does not have such effect, it not having been actually used for five days.

Error from Harper district court; PRESTON B. GILLETT, judge. Opinion filed February 11, 1905. Affirmed.

*Fred. Washbon*, for plaintiff in error.

*Sam. S. Sisson*, and *E. C. Wilcox*, for defendant in error.

The opinion of the court was delivered by

MASON, J. : The Kinnard Press Company sued Wyatt Stanley upon a note for $1267. Stanley defended upon the ground that a gasoline-engine for which the note was given had failed to meet certain express warranties, and that he had rescinded the contract of purchase. A trial resulted in a judgment for the defendant, and the plaintiff prosecutes error. A number of objections made to the consideration of the case on its merits have been considered and found insufficient.

Kinnard v. Stanley.

The specific warranty, a breach of which was claimed by the defendant, was that the engine was capable of developing twenty-five horse-power "when tested by the purchaser by the system for discovering the horse-power of an engine, known as the break-test system." This was incorporated in the printed form prepared by the company, upon which the order for the engine was made. There was evidence sufficient to justify a finding that in actual use the engine could not develop the specified horse-power; but no test was ever made by the purchaser according to the system prescribed in the contract of warranty. It is contended by plaintiff in error that the capacity of the engine must be determined by the very test stipulated for by the company; that to sustain his claim of a breach of this warranty, the defendant was required to show the application of such test and the failure of the engine to develop the required power when measured in this manner. To this we cannot agree. It is but just to assume, as against the company, that whatever may have been the peculiarities of the test described in the contract it proceeded upon some correct principle, and afforded a means for determining with reasonable accuracy the capacity of the engine under the ordinary conditions of actual use. To indulge in any other presumption would be to permit the company to perpetrate a manifest fraud. There was evidence that the engine when operated by agents of the company under conditions apparently satisfactory to them failed to develop more than fifteen horse-power. This was some evidence that it could not develop twenty-five horse-power measured by any fair method, and the company cannot be heard to say that the method it proposed was an unfair one.

The contract also contained this provision: "Sev-

enty-four degrees gasoline is the grade upon which our warranty is based.'' The gasoline used upon the trial of the engine was of a grade described as seventy-two degrees. It is argued that a test made with an inferior quality of gasoline was not binding upon the company. It is a sufficient answer to say that there was competent evidence from which it could have been found that the difference between the two grades of gasoline mentioned was inconsiderable so far as concerned the operation of the engine, and also that an authorized agent of the company waived the requirement of the contract in that regard.

The contract contained a provision that ''continued use of the engine for five days without complaint being made direct to the Kinnard Press Company at its factory in Minneapolis, by registered letter, shall be sufficient evidence that the warranty is fulfilled.'' Use of the engine was begun July 3, 1901. No notice of dissatisfaction with its operation was given until July 9. It is claimed that these facts precluded a recovery by defendant. It does not appear, however, that the engine was used continuously from July 3 to July 9, or that it was used for more than three days during that time. It was the continued use of the engine for five days without complaint that was to conclude the purchaser—not its retention for five days from the time it was first used.

The note was executed July 13, 1901, after the trial of the engine, being made payable October 1. Plaintiff in error seeks to give to this transaction the effect of a final acceptance of the engine. It is not capable of that interpretation, however. The original contract of purchase called for a note to be given to be due October 1, and provided that if such a note were not given the contract itself should stand as a written ob-

ligation to make payment at that time.   The mere delivery of the note made no change in the relation of the parties, one way or the other, and no circumstances were shown tending to give it the effect claimed.

Complaint is made of the admission of testimony regarding a conversation between an agent of the plaintiff and the defendant at the time the note was given.   The record, however, does not disclose that any timely objection was made to its reception.

The judgment is affirmed.

All the Justices concurring.